[Civ. No. 829.   First Appellate District.—August 23, 1911.]

ELIZABETH TENCH, Executrix of Last Will and Testament of JOHN TENCH, Deceased, Respondent, v. ELIZA McMEEKAN, Appellant, and ISADORA BRANDT and F. W. BRANDT, Codefendants.

TRUST—ASSIGNMENT OF BANK DEPOSIT TO SISTER—AGREED TERMS— PRIOR DEATH OF SISTER—TRANSFER WITHOUT CONSIDERATION—RE- COVERY BY ESTATE OF BROTHER.—Where an aged brother, who was helpless from paralysis, assigned a bank deposit to an aged sister, to be held in trust during their joint lives for their joint support, and that the money would be his until his death, and that the sister was to have what was left after his death, but her death unex- pectedly preceded his, the whole beneficial interest in the deposit was in the brother, and upon his death his executrix is entitled to recover the deposit against one who had instigated a transfer of the fund by the sister in her lifetime, without consideration, and with notice of the terms of the assignment.

ID.—PAYMENTS BY TRANSFEREE — JOINT SUPPORT OF BROTHER AND SISTER—CREDIT.—The transferee is entitled to be credited with pay- ments made in pursuance of the terms of the original assignment

of the deposit, for the joint support of the brother and sister during their joint lives.

ID.—PAYMENT FOR BURIAL EXPENSES OF DECEASED SISTER—RIGHT TO CREDIT.—The transferee of the sister is also entitled to be credited for a payment made out of the deposit for the burial expenses of the deceased sister.

ID.—DUTY OF BROTHER TO BURY SISTER.—By section 292 of the Penal Code it is made the duty of a brother, who is the nearest of kin of a deceased unmarried sister who has no means of her own, to bury her body; and the transferee, when paying for such burial out of the means of the brother in her hands, is entitled to be credited therefor, in an action by his executrix to recover his money in her hands.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Wm. H. Waste, Judge.

The main facts are stated in the opinion in *Tench* v. *Mc-Meekan, ante,* p. 14. Further facts are stated in the opinion of the court in this case.

Wm. H. H. Hart, and Aylett R. Cotton, for Appellant.

R. B. Tappan, for Respondent.

HALL, J.—These are appeals from a judgment against Eliza McMeekan and the order denying her motion for a new trial, and are presented in one transcript.

The action grows out of the same general state of facts as were involved in the case of *Elizabeth Tench* v. *Eliza Mc-Meekan* (No. 877), *ante,* p. 14, [118 Pac. 476], the appeals in which were this day decided by this court.

The present action was brought to recover the balance remaining of the money referred to in the opinion filed in the other action.

Isadora Brandt and her husband F. W. Brandt were made parties because the name of Isadora Brandt had been joined with that of appellant as depositor of the fund sued for, but as her name was subsequently removed from the account, no judgment was taken against her or her husband.

The facts concerning the transfer of both the money and the land are set forth in the complaint in this action substan-

tially as in the other, and the allegations of the complaint are supported by the same evidence.

The court made similar findings in this case as in the one to recover the land, and similar attacks are made upon the sufficiency of the evidence to support the findings, and for the reasons set forth in the opinion in the other case we think these attacks are not well founded.

In disposing of this case we do not deem it necessary to restate in detail the facts disclosed by the record. They are quite fully stated in the opinion filed to-day in the case involving the land, to which reference may be made for a complete understanding of the facts.

The complaint in this case was framed upon the theory that the assignment made by John Tench to Temperance Tench, of the money which he had on deposit in the bank, was in trust during their joint lives, to be used for their joint support, and that said Temperance was to acquire no interest in said money until the death of John Tench. That such interpretation of the assignment was justified by what was said and done in connection with the making of the assignment, in view of all the surrounding circumstances, we have no doubt.

It was represented to John Tench, then old, and helpless from paralysis, that if he would assign his money to his sister Temperance, she would use the same for their joint support; that the money would be his just the same as if there had been no assignment made, and whatever was left after his death would go to Temperance Tench. He accordingly made the assignment.

Probably neither John nor his sister Temperance clearly or at all had in mind that John might survive Temperance, which he in fact did. But it is clear that neither understood or intended by the assignment that Temperance should become the beneficial owner of the fund until after the death of John.

That her understanding was that until such event occurred she held the money as well as the land in trust only, is made certain by her repeated declarations to that effect to various witnesses who so testified.

It is a fair deduction from the evidence as to what was said and done, in view of the conditions and circumstances

surrounding the parties, that it was never intended that Temperance should become the beneficial owner of either the land or the money unless she should survive her brother. To accept the contention of appellant, that both the conveyance of the land and the assignment of the money were absolute, would be to suppose that John Tench in his old age, when sick and helpless, intended to deprive himself of all means of support except as the same might be accorded him as a matter of charity. This we would be loath to do.

Appellant, with notice of the conditions of the assignment from John Tench to Temperance Tench, which she herself instigated and without any consideration therefor, took an assignment from Temperance of the balance of such money, then on deposit in the bank. When Temperance died, John was entitled to this money.

The court found, in accordance with the contention of appellant, that she had drawn from the money on deposit, either personally or through Mrs. Brandt, $350; that from such sum she had expended various sums for specified purposes. From the findings it appears that $148 thus expended was for the support of either John or Temperance Tench, while the balance of the $350 was expended in and about the burial expenses of Temperance. The court gave appellant credit for the $148, but charged her with the balance of the $350, and included the same in the amount for which it gave judgment. The court in terms found that she had appropriated such balance to her own use. This, in view of the findings as to the specific purposes for which such balance was expended, should be treated as a conclusion of law and not properly a finding of fact. The court treated the expenditures for the burial of Temperance as not properly chargeable against the trust fund. In this we think the court erred. The action against appellant was in effect an action in equity, to charge her as an involuntary trustee for the estate of John Tench, with the amount of the balance of a trust fund in her hands at the time of his death. Temperance Tench at her decease was an unmarried woman, and John Tench was her brother and her next of kin, and if the theory of plaintiff in this action be correct, had sufficient means to bear the expense of her burial, while Temperance was of right possessed of no means whatever. Under section 292 of the Penal Code it

was the duty of John Tench to cause the body of his sister Temperance to be buried and to bear the expense thereof. This section provides that: ''The duty of burying the body of a deceased person devolves upon the persons hereinafter specified: 1. . . . 2. If the deceased was not a married woman, but left any kindred, the duty of burial devolves upon the person or persons in the same degree nearest of kin to the deceased, being of adult age, and within this state, and possessed of sufficient means to defray the necessary expenses.''

The next section (293, Pen. Code) provides that if the person whose duty it is to cause the burial of the remains of a deceased person fails to perform such duty, the person who does do so may recover from such delinquent treble the expenses thereof. (See, also, *Enos* v. *Snyder*, 131 Cal. 68, [82 Am. St. Rep. 330, 63 Pac. 170, 53 L. R. A. 221].) Upon John Tench, therefore, devolved the duty of causing the remains of his sister Temperance to be buried. He did not do it, but appellant performed that duty and paid the expense thereof out of a trust fund in her hands belonging to John. In this action to recover of appellant the balance of such trust fund it would clearly be just and equitable that she should be allowed for the expenditures thus made, and we think that the court erred in not so doing.

The amount for which judgment was ordered and entered September 2, 1909, is the sum of $815.37 and costs of suit. As appears from the findings and conclusions of law, this amount included the sum of $251.89, which the court erroneously. charged against appellant as the principal and interest thereon, on account of the amount expended out of the trust fund in and about the burial of Temperance Tench. This latter sum, $251.89, should be deducted from the principal amount for which judgment was rendered, as of date September 2, 1909.

Appellant also contends that because it is alleged and found that John Tench assigned his interest in the money in question to Temperance, the judgment is not supported by either the pleadings or the findings. This allegation and finding must be read in the light of the other allegations and findings, which show that such assignment was in trust only. Thus read there is no basis for appellant's contention in this regard.

The order denying the motion for a new trial is affirmed, and the trial court is directed to modify the judgment entered by substituting in lieu of the figures ''$815.37'' the figures ''$563.48'' as of date September 2, 1909, and as so modified the judgment is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 21, 1911.